



## MEMORANDUM OPINION

No. 04-11-00474-CR

Calvin Jerome **MASSENGALE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR12809B
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  June 6, 2012

AFFIRMED

The sole issue presented in this appeal is whether the trial court erred in denying Calvin Jerome Massengale's motion to suppress because statements were obtained from him after his request for an attorney was not honored by the investigating officer.  Because we hold Massengale's statement referring to an attorney was not a clear and unequivocal request for an attorney, we affirm the trial court's judgment.

**BACKGROUND**

During the course of a custodial interrogation involving a capital murder, the following exchange occurred between Massengale and the investigating officer:

| | |
|---|---|
| Massengale: | I need to find out what y'all are sayin' and ch… that I've done and how I did it and all this. So, if we're goin' — we might as well just go to the next step. You know what I'm sayin'. 'Cause that's, hat's, that's what I want to do. |
| Officer: | And you understand that going to that next step means that you don't have the opportunity to talk. Because what we're gonna do |
| Massengale: | No, I'm sayin'. Okay, what are y'all gonna do? |
| Officer: | — what we're gonna do is um — when it comes time — 'cause the next step is basically trial, alright? That's kind of what we're talking about. So the next step that … |
| Massengale: | So, yeah, I already been charged? Is that what you're saying? |
| Officer: | Yeah, yeah, you've been charged. |
| Massengale: | Yeah. So then, I'm just going to wait and talk to my lawyer then. |
| Officer: | Ok. The problem with that is it — when it comes time for trial, we're going to testify that we gave you the opportunity to tell us what happened because inevitably — |
| Massengale: | I mean can I get my lawyer to talk to y'all? |
| Officer: | Yeah. You can. It's possible. |
| Massengale: | I mean, so what'd be the difference? |
| Officer: | Well, he won't talk to us. |
| Massengale: | Yeah. |
| Officer: | What he'll do is he'll go —I mean he's going to wait and he's going to talk to the judge and he's going to talk to the jury. And at that time your lawyer's probably gonna tell you something like you know what we're gonna say that this happened or this happened. We're gonna say it was self-defense. We're gonna say that – you know – you were crazy. Whatever the case may be. The problem is, we're gonna get up and say we talked to him the day after, the next day, and he didn't tell us it was self-defense, he didn't tell us he went crazy, he didn't tell us he was high…. |

Massengale filed a motion to suppress, asserting that his reference to a lawyer was a request for an attorney and that the officer violated his constitutional right to counsel by continuing to question him. At the hearing on the motion to suppress, the investigating officer acknowledged that he and Massengale engaged in a conversation regarding a lawyer. When the officer was asked his reason for continuing to interrogate Massengale after that conversation, the

officer responded that whether a defendant has clearly invoked a right to counsel is a legal determination that he leaves up to the courts.[1] The officer later explained that if he believes a defendant has clearly invoked his right to counsel, he will cease the interrogation.[2] The trial court denied the motion to suppress, stating his reasoning on the record as follows:

> But as to the rest, and I do think that when one looks at the context and then really at the case law, that kind of explains what constitutes an unambiguous and unequivocal request. One of them is kind of close, I think, to the facts on [sic] this case because it seems like more of a discussion about whether it's a good idea to talk now, whether it's a better idea to wait and go to the next step. And so because there's all that discussion about timing and when would be a good time, and maybe I'll just talk to my lawyer then.
>
> And so I think the facts and what — you know, whatever the Defendant was saying in this case, if you look at it — and I did — closely to what he actually said, and in the context of the discussion prior to what he said, there was really more of a discussion about timing and how the system works, and whether it would be better to talk now or wait until later and talk to a lawyer when we take it to the next step. And that, coupled with the testimony, which I find credible from [the investigating officer] who just testified that, hey, if it had been unequivocal in his opinion, he would have stopped. He didn't perceive it to be a certain and unambiguous request for an attorney at that time, but it was more ambiguous than that. So I'm going to rule that those statements made by Calvin Massengale are — that part of the video is admissible.

Massengale appeals the trial court's order.

## DISCUSSION

If a suspect requests an attorney at any time during a custodial interrogation, the interrogation must cease and he is not subject to further questioning until an attorney is made available to him or the suspect himself reinitiates further communication with the police. *Davis*

---

[1] The officer stated, "In the short amount of time I was over there, I learned that it was better to continue speaking to an individual and allow the courts to determine whether or not the statement would be admissible or not, especially in cases where there could be other individuals involved. He may be able to give information on someone else other than himself, which may be admissible, even though something might — he might say against himself would be inadmissible. Instead of trying to deal with all those issues there in the room, continue talking, and then let it be decided among people that do this on a regular basis."

[2] The officer explained, "If he were to have said, I do not want to talk to you anymore until I speak to my attorney, which I've had that happen to me in interrogation rooms, when they make a clear invocation, I have ceased speaking to them. … A clear indication. It doesn't have to be verbatim but something that tells me then and there that they want an attorney, they don't want to go another step, and I need to stop talking to them, or if they ask me to stop talking to them."

*v. United States*, 512 U.S. 452, 458 (1994); *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 122 (2011). "To avoid difficulties of proof and to provide guidance to officer conducting interrogations," whether the suspect has actually invoked his right to counsel is an "objective inquiry." *Davis v. United States*, 512 U.S. at 458-59; *see also Davis v. State*, 313 S.W.3d at 339. Invocation of the right to counsel "'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* (emphasis in original). "Rather the suspect must unambiguously request counsel." *Id.* A suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* "If the statement fails to meet the requisite level of clarity," the law "does not require that the officers stop questioning the suspect." *Id.*

The rule as stated "provides a bright line rule that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering of information." *Id.* at 461. "But if we were to require questioning to cease if a suspect makes a statement that *might* be a request for an attorney, this clarity and ease of application would be lost." *Id.* "Police officers would be forced to make difficult judgment calls about whether the suspect in fact wants a lawyer even though he has not said so, with the threat of suppression if they guess wrong." *Id.* Accordingly, "law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.*

The United States Supreme Court has held that a suspect's statement "Maybe I should talk to a lawyer" was not a request for an attorney. *Id*. at 462. The Texas Court of Criminal Appeals has held that a suspect's statement "I should have an attorney" was not in the form of a request or an express statement that the suspect wanted a lawyer. *Davis v. State*, 313 S.W.3d at 341. Similarly, given the context in which Massengale made references to a lawyer in this case, we hold that "a reasonable police officer in the circumstances would [not] understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. at 459; s*ee also Jernigan v. State*, No. 06-10-00221-CR, 2011 WL 4954168, at *2 (Tex. App.—Texarkana Oct. 19, 2011, pet. ref'd) (holding suspect's questions "Do I need to get a lawyer?" and "Can I talk to one first?" did not clearly request an attorney).

## CONCLUSION

Because Massengale did not clearly request an attorney, the questioning was permitted to continue, and the trial court did not err in denying the motion to suppress. The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH